# EXHIBIT "A"

RITCHIE BROS. Financial Services

BALBOA CAPITAL

**Agreement #: 293561-002**

## EQUIPMENT FINANCING AGREEMENT

**Debtor Information:**

| | |
|---|---|
| Debtor Name: | Total Auto Movers Inc. |
| Billing Address: | 790 Westland Dr, Lexington, KY, 40504, USA |
| Physical Address: | 790 Westland Dr, Lexington, KY, 40504, USA |
| Phone Number: | 8597052379 |
| State of Formation: | KY |
| Contact Person: | Abdallah A Addarrat |
| Contact Email: | dullah@totalautomovers.com |
| Federal Tax ID: | X [redacted] |

Commercial Transaction/Business Use Only

**Creditor:** Balboa Capital Corporation

575 Anton Blvd, 12th Floor
Costa Mesa, CA 92626

Phone Number: 8553317237

Contact Phone: Customer Service

Contact Email: rbrar@rbfinance.com

This is an Equipment Financing Agreement ("**Agreement**"). "**Creditor**" means Balboa Capital Corporation and is also referred to as "**we**", "**us**" and "**our**". "**Debtor**" means the entity or individual identified above and is also referred to as "**you**" and "**your**".

**Schedule of Collateral:**

| Qty | Model Year | Make | Model | Serial No. | Equipment Cost |
|---|---|---|---|---|---|
| 1 | 2020 | Peterbilt | 389 | 1NPXLP9X9LD628028 | $129,600.00 |
| Equipment Location: 790 Westland Dr, Lexington, KY, 40504, USA | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $0.00 |
| Equipment Location: | | | | | |
| | | | | | $129600 |

Copy of Original

**Cost of Transaction Based On:**

| | |
|---|---|
| Equipment Cost: | $ 129,600.00 |
| Auction Admin Fees: | $ 325.00 |
| On-Site Property Insurance: | $ |
| Cargo Insurance (incl. taxes if any): | $ |
| Extended Service Contract: | $ |
| Sub-Total Before Taxes: | $ 129,925.00 |
| Sales/Use taxes: | $ |
| Sales/Use Taxes: | $ |
| Sales/Use Taxes: | $ |
| Total Equipment Invoice: | $ 129,925.00 |

**Cost of Transaction Based On (Cont'd):**

| | |
|---|---|
| Total Equipment Invoice: | $ 129,925.00 |
| Less Downpayment | $ 0.00 |
| Balance Owing: | $ 129,925.00 |
| Loan Admin Fee: | $ 1,100.00 |
| Life Insurance: | $ |
| Disability Insurance: | $ |
| Original Principal Balance: | $ 131,025.00 |
| Interest Rate (% per annum): | 10.49 % |
| Cost of Credit | _______ % |



The original document is owned by Balboa Capital Corporation and this copy was created on Nov 15, 2023 02:52:35 PM.

**Schedule of Monthly Payment Terms: "Term" 60 months.**

60 payments @ $2815.59

Original Term: 60 months

**Commencement & Payment Due Dates:**

This Agreement will commence on the date you sign our Disbursement Authorization form or any other form acceptable to us ("Commencement Date"), authorizing us to pay Rush Truck Centers of Florida INC for the Equipment.

Your first Monthly Payment will be due and payable on the date that is 30 days after the Commencement Date and each other Monthly Payment will be due and payable on the same day of each succeeding month (each a **"Payment Date"**).

12/14/2023

**IMPORTANT: Before you sign this Agreement, please read it carefully (including the additional Terms and Conditions contained in the pages following this page) because only those terms in writing are enforceable. No other terms or oral promises not contained in this written Agreement may be legally enforced. You may change the terms of this Agreement only by another written agreement signed by us. By signing this Agreement, you agree to be legally bound by all of the Terms. This Agreement is the complete and exclusive statement between you and us. You certify that all the information contained in this Agreement and your Application is correct and complete. This Agreement is not binding on us until we sign it. You agree that this Agreement is entered into by you for business purposes and not for personal, family or household purposes.**

Copy of Original

**Debtor:** Total Auto Movers Inc.

**By:** X DocuSigned by: FA35ED736FB8468...

Abdallah A Addarrat President

Print Name & Title

Date: X 11/10/2023

This Agreement shall not become binding upon us until accepted in writing at our offices in Irvine, CA by our authorized officer.

**Creditor:**

**Balboa Capital Corporation**

**By:** DocuSigned by: Matthew Cevallos B573B763AAF0442...

Vice President

11/15/2023

Date



The original document is owned by Balboa Capital Corporation and this copy was created on Nov 15, 2023 02:52:35 PM.

RITCHIE BROS. Financial Services

BALBOA CAPITAL

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement # 293561-002**

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Debtor and Creditor agree as follows

**1. SECURITY INTEREST.** Debtor hereby grants Creditor a security under the Uniform Commercial Code in the above property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Debtor if its obligations thereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. **DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL. 2. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT.** Debtor shall repay creditor the above Monthly Payments in the number of monthly installments indicated above. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment Creditor will charge Debtor shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's Receipt of Creditor's invoice therefor. Advance payments, which are the first and last Monthly Payments, may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not commenced, the advanced payments, documentation fee and security deposit may be retained by Creditor to compensate Creditor for its processing costs, labor, and other expenses. **3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND CREDITOR OR AFFECT DEBTORS DUTY TO PAY THE MONTHLY PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER. **4. PREPAYMENT OPTION:** DEBTOR WILL HAVE THE RIGHT TO PREPAY IN FULL, BUT NOT IN PART, ALL OUTSTANDING AMOUNTS UNDER THIS AGREEMENT (THE "PREPAYMENT") PRIOR TO THE END OF THE SCHEDULED PAYMENT TERM. ANY SUCH PREPAYMENT SHALL BE MADE IN THE AMOUNT OF THE THEN CORRESPONDING "PREPAYMENT AMOUNT". THE PREPAYMENT AMOUNT SHALL BE AN AMOUNT EQUAL TO: (A) ALL SCHEDULED LOAN PAYMENTS AND ALL OTHER SUMS DUE BUT UNPAID UNDER THE AGREEMENT AT THE TIME OF PREPAYMENT, PLUS (B) THE PRESENT VALUE OF ALL SCHEDULED LOAN PAYMENTS TO BECOME DUE DURING THE REMAINDER OF THE AGREEMENT TERM (DISCOUNTED TO PRESENT VALUE AT THE INTEREST RATE APPLICABLE TO THIS AGREEMENT), PLUS (C) THE CORRESPONDING "PREPAYMENT FEE". THE PREPAYMENT FEE SHALL EQUAL ONE PERCENT OF THE THEN OUTSTANDING PRINCIPAL BALANCE UNDER THIS AGREEMENT FOR EACH FULL TWELVE MONTHS REMAINING IN THE AGREEMENT TERM AT THE TIME THE PREPAYMENT AMOUNT IS RECEIVED BY US. **5. FINANCING.** THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. SEE PREVIOUS AND FOLLOWING PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT. **CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMACE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THE AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This agreement is effective only upon execution by an authorized officer of Creditor following Debtor's execution hereof, and upon execution Creditor shall fund the Equipment Cost/Advanced. Debtor hereby authorizes Creditor to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Creditor reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral. **6. LOCATION; INSPECTION; USE.** Debtor shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Creditor may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements. **7. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent. **8. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity. **9. LOSS AND DAMAGE; CASUALTY VALUE.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Equipment to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Equipment, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment. **10. PAYMENT OF OBLIGATIONS.** Payment of all Obligations under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from this account on which Debtor's deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement on or after the due date of Debtor's Monthly Payment, for scheduled Monthly Payments or other amounts due and owing at the time under this Agreement. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is authorized to debit the account on which Debtors deposit check was drawn, or any other account from which Debtor paid any Obligation under this Agreement. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. However, Debtor agrees that Creditor, or its assignees, has the right, but not the obligation, to electronically withdraw funds from the bank account on which Debtor's deposit check was drawn, the account specified below, or any other account from which Debtor paid any Obligation under this Agreement to pay for any unpaid Monthly Payment or other amounts due and owing at the time under this Agreement. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Account Number: X [redacted] ABA / Routing Number: X [redacted]

Financial Institution Name: X [redacted]

Initials: X DS AAA

**11. TITLING.** Debtor is the owner of the Equipment and Debtor guarantees that physical tilting of the Equipment will be accomplished in a timely manner. Each Vehicle subject to this Agreement shall bear license plates and the title there to shall be registered in the name of Debtor. Debtor agrees to provide to Creditor the original title documentation or DMV receipt within 30 days of when Debtor receives it from the titling authority. Debtor to indemnify Creditor from any damage or loss incurred from Debtor's failure to comply with this section. Debtor, at Debtor's sole cost, will obtain and maintain all registrations, titling, plates, permits and licenses necessary for use of the Equipment in Debtor's business, and in conformance with the laws of the state within in the principal place of business of the Debtor is located or in the principal place where the Vehicle is garaged. Debtor further grants Creditor limited power of attorney to sign off on any title documentation in case of any repossession or termination. Debtor further agrees to pay a one-time $350.00 titling if Creditor has not receive the correct transferred title of DMV receipt in its office after written demand. **12. TAXES AND FEES.** Debtor will file all tax returns for each Vehicle and pay when due all taxes which may be assessed (including (Federal) Heavy Vehicle Use Tax, personal property tax, fines and penalties) and fees (including Vehicle licensing, registration and inspection fees) relating to the Equipment or this Agreement. If Creditor pay any of the above for Debtor, Debtor agrees to reimburse Creditor and to pay Creditor a processing fee for each payment Creditor makes on Debtors behalf. In addition, Debtor also agrees to pay Creditor any filing fees prescribed by the Uniform Commercial Code or other law and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. Debtor further agrees to pay Creditor a documentation fee on or before the date the first payment is due and a termination fee. **13. INSURANCE.** Debtor agrees to maintain at all times during the term of this Agreement, at Debtor's expense, "Special Form" property insurance, with an insurance provider acceptable to Creditor, protecting the Equipment for its full replacement value, naming Creditor as a loss payee on a "Lender's Loss Payable" endorsement; and, if requested, public liability insurance], in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance on the commencement date of this Equipment Finance Agreement or of any subsequent written request. **14. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall reimburse Creditor the cost of such performance. **15. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Equipment, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim. **16. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of incompetency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under anv other insolvency law or law providing for the relief of Debtors,

Initials: X DS AAA



The original document is owned by Balboa Capital Corporation and this copy was created on Nov 15, 2023 02:52:35 PM.

**Agreement # 293561-002**

including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) to a guarantor of other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a loan, lease or agreement providing financial accommodation with a third party; (i) expiration or cancellation of any policy of insurance agreed to be paid for by Debtor, or the cessation in force according to its original terms of any such insurance, or of any extension or renewal thereof, during the entire term of this Agreement; or (h) creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise. **17. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Equipment without notice or demand to Debtor; (c) take possession of and/or render unusable any or all Equipment, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Equipment at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell, lease or otherwise dispose of any Vehicles, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may if permitted by law bid and become the purchaser at any such sale. **18. EXPENSES.** Debtor shall pay Creditor its costs and expenses including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed. Debtor shall reimburse Creditor for all UCC search and filing fees and any other costs related to this Agreement incurred by Creditor. **19. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against any Vehicle or assign any of Debtor's obligations hereunder. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties **20. PERSONAL PROPERTY.** As between the parties the Equipment shall at all times be deemed personal. Debtor will provide Creditor any landlord, mortgagee or other real property waivers requested by Creditor as to the real property where any Equipment is or is to be located. **21. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within Five (5) days of when due, Debtor agree to pay us (a) twelve percent (12%) of each such late payment (to the extent permitted by law) (b) amounts Debtor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month. **22. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1) Creditor shall provide Debtor such termination statements related to the Equipment as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such termination statement. **23. ADDITIONAL DOCUMENTS.** Debtor further shall furnish Creditor (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Creditor may request. **24. NOTICES.** Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Debtor shall promptly notify Creditor of any change in Debtor's address. **25. GENERAL.** This agreement constitutes the entire agreement of the parties as to its subject matter and shall not be amended, altered or changed except by a written agreement signed by the parties. Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this agreement requires, the neutral includes the masculine or feminine and the singular includes the plural. If there is more than one Debtor named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this agreement are solely for the convenience of the parties and are not an aid in the interpretation. THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA. DEBTOR SUBMITS TO THE JURISDICTION OF CALIFORNIA AND AGRESS THAT THE CALIFORNIA STATE COURTS OF ORANGE COUNTY AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this agreement. The obligations of Debtor shall survive the release of the security interest in the Equipment. **26. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS: (a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY CREDITOR AT ITS OFFICES IN IRVINE, CA, WHERE THIS AGREEMENT IS MADE TO BE ENTERED INTO AND PERFORMED SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (b) EACH REPRESENTATION PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT ALL EQUIPMENT SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**27. Counterparts and Facsimile Signatures. If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will not be binding on Creditor. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our ink signed signature and shall be marked "Original". To the extent that any Vehicle Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our ink signed signature and is marked "Original". DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| (CREDITOR) | (DEBTOR) |
|---|---|
| **BALBOA CAPITAL CORPORATION**<br>**575 Anton Blvd. 12th Floor**<br>**Costa Mesa, CA 92626** | **Total Auto Movers Inc.**<br>**790 Westland Dr**<br>**Lexington, KY, 40504, USA** |
| By: DocuSigned by: Matthew Cevallos B573B763AAF0442... | By: X DocuSigned by: [signature] FA35ED736FB8468... |
| Vice President | Name: Abdallah A Addarrat |
| Date: 11/15/2023 | Title: President |
| | Date: X 11/10/2023 Home Phone: X 8596080985 |



The original document is owned by Balboa Capital Corporation and this copy was created on Nov 15, 2023 02:52:35 PM.

Exhibit A1

**Rush Truck Center, Orlando**
1925 W. Princeton Street
Orlando, FL 32804
407-877-3636

# Customer Invoice

## TRUCK INFORMATION

| | | | |
|---|---|---|---|
| YEAR - MAKE | 2020 Peterbilt | MODEL | 389 |
| SERIAL NO. | 1NPXLP9X9LD628028 | STOCK NO. | 1023858 |
| SALESMAN | Scott Binder | | |

## CUSTOMER INFORMATION

SOLD TO: Total Auto Movers Inc
ADDRESS: 790 Westland Dr
CITY: Lexington STATE: KY ZIP: 40504

| DATE | NEW OR USED | ENGINE NO. |
|---|---|---|
| 11/14/2023 | Used | Y191402 |

PURCHASE ORDER NO.

OPTIONAL EQUIPMENT AND ACCESSORIES

Shipping address: [redacted]

Lienholder:
BALBOA CAPITAL CORPORATION
PO BOX 15270
IRVINE, CA 92623

*** SUBJECT TO ADJUSTMENT - FINAL F.E.T. MAY VARY. ANY F.E.T. VARIANCE RESPONSIBILITY OF DEALER.**

## VEHICLE SALES

All Sales are in US Dollars

| | | |
|---|---|---|
| Sales Price | 129,600.00 | |
| Factory Paid F.E.T | 0.00 | |
| F.E.T Tire Credit | 0.00 | |
| Total Factory Paid F.E.T | 0.00 | |
| Optional Extended Warranties | 0.00 | |
| Sub-Total | 129,600.00 | |
| | | |
| Dealer Paid F.E.T* | 0.00 | |
| Local Taxes | 0.00 | |
| Dealer Fee** | 325.00 | |
| | | |
| Total Cash Delivered Price | 129,925.00 | |
| Total Net Allowance on Used Vehicle(s) | | 0.00 |
| Unpaid Balance Due on Delivery | | 129,925.00 |
| | | |
| Total Used Vehicle Allowance | | 0.00 |
| Less Total Balance Owed | | 0.00 |

## TRADE-IN(S)

| YEAR | MAKE | MODEL | SERIAL NO. | TRADE ALLOWANCE |
|---|---|---|---|---|
| | | | | |

## RUSH TRUCK CENTER

**By:**______________________________

State of ______________________________

County of ______________________________

______________________________, Being duly sworn says that he/she signed the Customer Invoice, and that the statements set forth on this Customer Invoice are true and correct.

______________________________ Notary Public

# EXHIBIT "B"

# PERSONAL GUARANTY

**Equipment Financing Agreement # 293561-002**

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

X DocuSigned by:
FA35ED736FB8468...

Copy of Original

Abdallah A Addarrat — X 11/10/2023

**Name** — **Date**

[redacted]

**Home Street Address, City, State, Zip Code**

[redacted] — [redacted]

**Social Security Number** — **Phone Number**

EFA251